IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANN M. PHILLIPS,

                Plaintiff,

v.

Commissioner of Social Security Administration,

                Defendant.

Case No. 6:17-cv-00480-AC

OPINION AND ORDER

TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137
    Of Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

MARTHA A. BODEN
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for Defendant

1 – OPINION AND ORDER

*Opinion and Order*

ACOSTA, Magistrate Judge:

Ann Mary Phillips ("Phillips") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

*Procedural Background*

Phillips filed for DIB and SSI on August 8, 2012, alleging disability as of January 1, 1996, due to major depression, obesity, bi-polar disorder, arthritis, and vein occlusion of the left eye. Tr. 274. Her application was denied initially and upon reconsideration. Tr. 34. A video hearing was held on February 9, 2015, before an Administrative Law Judge ("ALJ"); Phillips was represented by a non-attorney representative and testified, as did a vocational expert ("VE"). Tr. 72-91. On May 7, 2015, ALJ Marilyn Mauer issued a decision finding Phillips not disabled. Tr. 34-45. Phillips requested timely review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. Tr. 1-3.

*Factual Background*

Born in 1964, Phillips was 31 years old on the disability onset date. Tr. 43. She dropped out of high school in the ninth grade but later obtained her GED. Tr. 275, 604. She previously worked as a general laborer and housekeeper. Tr. 275.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v.*

2- OPINION AND ORDER

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 416.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b) and 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c); 416.920(a)(4)(ii). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*,

3- OPINION AND ORDER

482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d); 416.920(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f); 404.920(f); 416.920(a)(4)(iv). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g); 416.960(c). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566; 416.920(a)(4)(v).

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Phillips had not engaged in substantial gainful activity since the alleged onset date, January 1, 1996. Tr. 36.

At step two, the ALJ determined Phillips had the following severe impairments: bi-polar disorder; bilateral hip osteoarthritis, right greater than left; morbid obesity; right rotator cuff tear; and history of alcohol abuse. Tr. 37. The ALJ found Phillips's retinal vein occlusion of the left eye and rosacea dermatitis to be non-severe impairments. Tr. 37.

At step three, the ALJ found that Phillips's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 38. Because Phillips did not establish disability at step three, the ALJ continued to evaluate how Phillips's impairments affected her ability to work during the relevant period. The ALJ found Phillips had the residual

functional capacity ("RFC") to perform modified light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

> she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a combined total of four hours per eight-hour workday, and sit for six hours per eight-hour workday. She is able to balance without limitation. She can never climb ladders, ropes, or scaffolds. She cannot reach overhead with the right upper extremity. She can occasionally climb ramps and stairs, stoop, crouch, crawl, and kneel. She can read and write in English. She can read print that is no smaller than typeface J1 (ordinary newsprint). She can understand, remember, and carry out simple instructions in a setting with no hazards, no public contact, no teamwork assignments, and no strict production pace, which is defined as an hourly production rate.

Tr. 39.

At step four, the ALJ found that Phillips was unable to perform her past relevant work as a sawmill laborer. Tr. 43.

At step five, based on the testimony of the VE and other evidence, the ALJ determined Phillips could perform other work existing in significant numbers in the national and local economy despite her impairments, including laundry sorter, photocopy machine operator, and garment sorter. Tr. 44. Accordingly, the ALJ concluded Phillips was not disabled under the Act. *Id.*

*Discussion*

As a preliminary matter, Phillips submitted a brief to the Appeals Council stating that she was amending her disability onset date to April 23, 2012, from her previous onset date of January 1, 1996. Tr. 10. Phillips cites no legal authority supporting her ability to unilaterally amend her disability onset date, particularly after the ALJ rendered her opinion. In *Lewis v. Apfel*, the court noted the plaintiff cited "no authority suggesting that the ALJ abused his discretion in denying [the plaintiff's] request" to amend his disability onset date, "or that the court may even review such a decision." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

5- OPINION AND ORDER

*Lewis* puts forth two relevant legal propositions: first, a plaintiff must submit a request to the Commissioner to amend a disability onset date; and second, the ALJ has the discretion to deny a plaintiff's request to amend their disability onset date. *See Id.* Here, Phillips did not make a request to amend her disability onset date, she simply took it as axiomatic that it could be amended at will. Further, the Appeals Council gave no indication that it accepted her "request" to amend her onset date. Therefore, Phillips's disability onset date remains January 1, 1996 for the purposes of this appeal.

Phillips asserts three errors: (1) the Commissioner failed to adequately address her subjective symptom testimony; (2) the Commissioner improperly rejected the medical opinion of Dr. William Trueblood, Ph.D.; and (3) the Appeals Council's treatment of her newly submitted evidence.

## I. Phillips's Subjective Symptom Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms . . . [or] other testimony that appears less than candid[.]" *Id.* at 1284. However, a negative credibility finding made solely

6- OPINION AND ORDER

because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Phillips stated in her Adult Function Report that she suffered from anxiety around people, experienced side effects from her medication, including fatigue and disorientation, and had a short attention span. Tr. 297, 302. She further stated her daily routine consisted of light household chores punctuated by periods of rest, cooking dinner two to three times per week, and watching television to avoid leaving her home. Tr. 298. Phillips's stated social activities were limited: she did not spend time with others, needed someone to accompany her when leaving her home, and only left her home on a regular basis for therapy and shopping. Tr. 301. Physically, Phillips stated she could walk ten minutes before needing a break, and endorsed difficulties lifting, squatting, bending, standing, reaching, walking, kneeling, and stair climbing. Tr. 302.

The ALJ gave Phillips's subjective symptom testimony little weight. First, the ALJ noted Phillips worked at the level of substantial gainful activity in 1998 and 1999 despite alleging a disability onset date of January 1, 1996. Tr. 36. An ALJ may consider "ordinary techniques of credibility evaluation" when examining a plaintiff's subjective symptom testimony. *Smolen*, 80 F.3d at 1284. Here, Phillips held herself out as unable to work a full-time job, yet worked full-time for two years during the same time period. The ALJ did not err in discrediting Phillips's subjective testimony because she worked despite allegedly disabling impairments.

Furthermore, the ALJ noted Phillips ceased working in 2000 because she moved away from her place of work, not due to disabling impairments. Tr. 37. The ALJ did not err by citing this reason to impugn Phillips's subjective testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035,

7- OPINION AND ORDER

1040 (9th Cir. 2008) (a claimant stopping work for reasons other than his allegedly disabling impairments is a sufficient reason to impugn his subjective testimony).

The ALJ also noted Phillips's stated limitations were inconsistent with her level of activity. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities of daily living that are inconsistent with a plaintiff's testimony are a legally sufficient reason to discredit that testimony). Phillips alleged that she tired easily, had difficulty standing, following through with tasks, and performing light chores, yet in 2009 she reported to a treating provider that she worked on a ranch performing "fairly heavy chores." Tr. 527. The ALJ did not err in identifying the inconsistency between alleged disabling physical limitations and performing heavy chores on a ranch.

The ALJ discounted Phillips's subjective testimony due to an unexplained treatment gap. Tr. 41. "[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, Phillips sought mental health treatment in 2005 and did not seek treatment again until 2012; the extensive gap in treatment is unexplained. Tr. 41. The ALJ did not err in citing the treatment gap to discount Phillips's subjective testimony.

The ALJ further discounted Phillips's subjective testimony because her impairments responded well to conservative treatment. *See Tommasetti*, 533 F.3d at 1040 (a plaintiff's impairments responding well to conservative treatment is a legally sufficient reason to doubt his subjective testimony). Phillips's minor arthritis and pain in her left hip was largely resolved with injections to the affected area, and Dr. Robert Shannon, M.D. recommended non-impact exercises and over-the-counter pain medication to manage her condition. Tr. 522, 558. Phillips's right shoulder experienced a low-grade partial tear of a tendon; she stated to her treatment provider that she wished "to proceed with conservative measures at this point" because

8- OPINION AND ORDER

she felt better. Tr. 613. She also denied cortisone injections. *Id.* As such, the ALJ's finding is supported by substantial evidence.

The ALJ also found Phillips's mental impairments improved with counseling and medication. Tr. 41. In July 2012, Phillips reported that her anxiety lessened with medication and Seroquel helped her sleep, although she experienced some "fogginess" in the morning. Tr. 398. Further appointments demonstrated improvement in her mental health symptoms, with Phillips sometimes participating in group therapy. Tr. 409, 411, 412, 467, 478, 581, 655. Accordingly the ALJ did not err in her interpretation of the record.

Overall Phillips's arguments primarily address the manner in which the ALJ analyzed Phillips's subjective symptom testimony. She argues the ALJ merely restated the medical evidence, hearing testimony, and third-party lay witness evidence, and failed to identify specific evidence conflicting with specific testimony. Phillips overstates the specificity with which ALJs are required to connect a plaintiff's subjective statements to the evidence refuting those statements. Even if the ALJ explained her decision with "less than ideal clarity," she did not err so long as her logical path may be reasonably discerned. *See Alaska Dep't. of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004) ("[e]ven when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned'"). Here, the ALJ's path may be reasonably discerned and, as such, she did not err.

## II. Dr. Trueblood's Medical Opinion

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians

9- OPINION AND ORDER

are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn* 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

On March 11, 2014, Dr. William Trueblood performed Phillips' psychodiagnostic exam. Tr. 602-612. He reviewed behavioral health records from 2012 and 2013, and conducted psychological examinations to reach his opinion. Tr. 602. Also, Phillips included in her medical history that she felt intense anxiety around crowds and people, experienced traumatic flashbacks to negative events in her past, suffered from manic episodes, and experienced problems with her memory and attention span. Tr. 603-04. Phillips also reported that her daily activities consisted of watching television, doing Sudoku puzzles, riding three miles on a stationary bike, and cooking simple meals; she rarely performed household chores beyond cleaning dishes and doing the laundry. Tr. 605. Dr. Trueblood diagnosed Phillips with bi-polar disorder, post-traumatic stress disorder ("PTSD"), social anxiety disorder, tentative cognitive impairment, knee and hip problems, and two mild traumatic brain injuries. Tr. 608. In the "ability to do work-related activities" section of the opinion, Dr. Trueblood stated Phillips would have marked difficulty interacting appropriately with the public, supervisors, co-workers, and responding to usual work situations and changes in work routine. Tr. 611.

The ALJ gave Dr. Trueblood's opinion limited weight, stating that while his diagnoses of bi-polar disorder and anxiety were supported by the record, the diagnosis of PTSD was not, as Phillips's treatment notes revealed an absence of recurrent intrusive memories of negative events. Tr. 42. Phillips also stated that she suffered from two traumatic brain injuries, but the ALJ noted the record was devoid of references to these injuries. Tr. 42. The ALJ rejected Dr. Trueblood's assessment that Phillips would have marked difficulty interacting with people in the workplace, stating it contradicted the doctor's own findings that Phillips had mostly moderate limitations in social functioning and concentration, persistence, and pace. Tr. 42.

As a preliminary matter, the Commissioner must give "clear and convincing reasons" for discounting Dr. Trueblood's opinion because the only conflicting medical opinion comes from the non-examining agency consultant physician, Dr. Arthur Lewey, Ph.D. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("the opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician").

Here, the ALJ pointed to additional evidence supporting her decision to grant limited weight to Dr. Trueblood's opinion. First, the ALJ noted that Dr. Trueblood's diagnosis of PTSD was not supported by the record. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may grant little weight to a physician's opinion that is not supported by the record). The ALJ observed Phillips's treatment notes failed to recount incidents of traumatic recollections or "recurrent intrusive memories" of negative events. Tr. 42. While Phillips endorsed to Dr. Trueblood frequent intrusive memories and distress triggered by past trauma, she did not relate similar symptoms of PTSD to her treating counselors. Tr. 389. A treatment note stated that due to her daughter resuming contact with Phillips's abusive ex-husband "a lot of the memories of the abuse start to come back to her," which Phillips argues

11- OPINION AND ORDER

corroborates her symptoms. Tr. 389. The treating counselor, however, noted "the only time [the memories come back] is when she is talking with her daughter" about the daughter's relationship with Phillips' ex-husband. Tr. 391. Phillips's description of intrusive memories to her treating counselor, while emotionally difficult, was incongruent with her description to Dr. Trueblood. Therefore, the ALJ did not err in giving limited weight to Dr. Trueblood's diagnosis of PTSD because it was unsupported by the record.

The court notes a treatment record from 2012 that states "[i]n the past, [Phillips] would have met criteria for PTSD, but no longer has symptoms of re-experiencing or dissociating and there is no significant hypervigilance noted. Individual appears to have met major developmental milestones." Tr. 402. This treatment note does not corroborate Dr. Trueblood's assessment in 2014, as there is no evidence Phillips' 2012 symptoms returned save for her subjective statements to Dr. Trueblood. Additionally, the symptoms described in the treatment note do not appear in the record, excepting the instance noted above.

The ALJ also gave little weight to Dr. Trueblood's opinion because Phillips told the doctor that she suffered two traumatic brain injuries, and Dr. Trueblood noted these injuries in the diagnoses section of the opinion. However, such injuries appear nowhere else in the record. Tr. 42. An ALJ may grant little weight to a medical opinion that is not supported by the record. *See Batson*, 359 F.3d at 1195. Accordingly, the ALJ did not err; moreover, Phillips does not assign error to the ALJ's finding.

The ALJ also gave limited weight to Dr. Trueblood's opinion that Phillips experienced marked limitations in all areas of social functioning because the assessment was contradicted by the doctor's own notes. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (an ALJ may grant limited weight to a physician's opinion where the ALJ finds inconsistencies between the physician's notes and the physician's opinion). Dr. Trueblood noted it was difficult to gauge

12- OPINION AND ORDER

the degree of difficulty Phillips felt in engaging in social situations, and stated "[t]entative impression is that they are not marked but might be moderate." Tr. 607. He further noted Phillips "appear[ed] to have just limited but some social contact." Tr. 607-08. Dr. Trueblood then incongruently assessed "marked" limitations in all areas of social functioning. Tr. 611. The ALJ did not err in identifying these discrepancies to accord limited weight to Dr. Trueblood's opinion.

Phillips's argument that the ALJ substituted her own lay opinion for the opinion of an examining physician is unavailing. The ALJ is tasked with resolving conflicts in the medical evidence where, as here, the non-treating, non-examining consulting physician's opinion conflicts with that of an examining physician. *See Tommasetti*, 533 F.3d at 1041-42 (the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence). Furthermore, "the Court has 'consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor,' when the ALJ has pointed to additional evidence in support of this decision." *Agatucci v. Berryhill*, WL 6629062 (9th Cir. 2017) (quoting *Morgan*, 169 F.3d at 602). Therefore, Phillips's argument is inapposite.

Phillips, citing *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), also argues the ALJ must grant more weight to Dr. Trueblood's opinion than Dr. Lewy's opinion because Dr. Trueblood gave his opinion later. *Lester*, however, is distinguishable. There, the court found that a doctor's later opinion should be given more weight than his earlier opinion, because the doctor's later opinion "was based on a more complete evaluation of the combined impact of *all* of Lester's impairments." *Id.* Phillips erroneously assumes that because Dr. Trueblood evaluated Phillips at a later date, his must be a "more complete evaluation" of Phillips's condition. But Dr. Trueblood had access only to the Deschutes County Behavioral Health

13- OPINION AND ORDER

records, including "numerous progress notes," from 2012 and 2013. Tr. 602. Dr. Lewy, however, had access to medical records from Deschutes County, Bend Ophthalmology, Virginia Garica Memorial Health, Mosaic Medical, and other providers. Tr. 132-37. Therefore, Dr. Trueblood did not have access to a more complete evaluation of the combined impact of Phillips's impairments than Dr. Lewy.

Phillips's final argument posits that the ALJ erred by failing to develop the record in light of the inconsistencies in Dr. Trueblood's opinion. An "ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ found Dr. Trueblood's opinion inconsistent with his narrative notes, which does not necessarily trigger the duty to "recontact" the doctor. *See Ghanim*, 763 F.3d at 1161. Rather, as discussed above, the ALJ reasonably resolved an ambiguity by describing in detail the short-comings of Dr. Trueblood's assessment. Therefore, the ALJ did not err.

The bulk of Phillips's arguments amount to a request for an alternative reading of the evidence, but the court cannot overturn the Commissioner's opinion when the opinion is rational and supported by substantial evidence, even if an equally rational interpretation exists. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (the Court may not substitute its judgment for that of the Commissioner).

III.   Evidence Submitted to the Appeals Council

"The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). "The administrative record includes evidence submitted to and considered by the Appeals Council."

14- OPINION AND ORDER

*Id.* The district court must consider the entire record, including evidence newly submitted to the Appeals Council, when "reviewing the Commissioner's final decision for substantial evidence." *Id.* at 1163.

The Appeals Council considered Phillips's newly submitted evidence before it concluded that substantial evidence supported the ALJ's decision. Tr. 2. The newly submitted evidence consisted of medical records and an "other source" medical opinion from Cynthia Clark, Qualified Mental Health Associate ("QMHA"). Tr. 726-821. Clark rendered her opinion after treating Phillips for more than one year. Tr. 808. Clark opined that Phillips's depressive states lasted three to four months, during which she would rarely leave the house or get out of bed. Tr. 808. Clark also stated that Phillips would miss more than five days of work per month because she struggled in public and was only able to be in the community for short periods of time. Tr. 812. The VE testified that a prospective worker would be unemployable if the worker missed more than one day per month due to illness. Tr. 90. The Appeals Council did not explain why it did not find Clark's opinion persuasive, save for boilerplate language stating "[w]e found this information does not provide a basis for changing the [ALJ's] decision." Tr. 2. Because the court cannot affirm an administrative agency's decision on grounds which it did not rely, the court cannot consider the Commissioner's arguments for granting Clark's opinion little weight. *See Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194-196-97 (1947) (a reviewing court must judge the propriety of an administrative action solely on the grounds invoked by the administrative agency, and cannot affirm the action on an unused but more proper rationale). Accordingly, the ALJ's opinion is not supported by substantial evidence, as Clark opined Phillips suffered from unrefuted disabling impairments.

The Commissioner argues "Ms. Clark's treatment notes, which were available to the ALJ when she issued the unfavorable decision, showed that counseling and medication management

15- OPINION AND ORDER

improved Plaintiff's symptoms and she was able to stay calm in stressful situations." While the Commissioner's argument regarding Clark's treatment notes is generally supported by the record, the ALJ did not have the benefit of viewing Clark's opinion on Phillips's functional limitations. Additionally, the ALJ did not review Clark's newly submitted treatment notes. The Commissioner's argument is, therefore, inapposite.

*Remand*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harmen v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en*

*banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The Commissioner erred by not commenting on probative evidence, including the "other source" medical opinion of Clark, who opined Phillips experienced disabling functional limitations. Further proceedings are necessary for the ALJ to accept or reject Clark's opinion, as well as to examine the newly submitted medical records. Additionally, the ALJ can accept or reject Phillips's amended disability onset date, which would alter the date of disability onset from 1996 to 2012.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Phillips' applications for DIB and SSI is REVERSED and REMANDED for further proceedings.

DATED this 16th day of April, 2018.

John V. Acosta
United States Magistrate Judge

17- OPINION AND ORDER